UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:12-cv-00860-MOC-DSC

| | |
|---|---|
| **BRIDGET TAYLOR,** | ) |
| Plaintiff, | ) |
| Vs. | ) ORDER |
| **NORTH CAROLINA DEPARTMENT OF REVENUE,** | ) |
| Defendant. | ) |

**THIS MATTER** is before the court on defendant's post-verdict Brief Regarding Pain and Suffering (#59), which the court deemed to be a Motion for Remittitur, seeking to set aside the jury's award of compensatory damages. See Order (#65). Plaintiff has timely filed her Response (#68) to defendant's motion. Despite the court's Order (#65) irecting that no Reply be filed, defendant has filed a Reply, which the court has not considered. For the reasons that follow, the court finds the jury award of compensatory damages in the amount of $225,000.00 to be unsupported by evidence introduced at trial.

I.

Plaintiff, a former employee of the State of North Carolina, brought this action pursuant to Title VII and Section 1981 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., as amended by the Civil Rights Act of 1991. At trial, plaintiff contended that defendant failed to promote her and then demoted her based on her gender, violations of Title VII. At the end of a three-day trial, the jury returned a verdict in favor of plaintiff on the issue of gender discrimination, awarded back pay in the amount of $9,390.22, and allowed compensatory damages in the amount of $225,000.00.

Defendant contends that the court should remit the award of compensatory damages as plaintiff failed to put on evidence that would support the jury's award.

II.

In the context of a civil rights violation, the Supreme Court has long held that the depravation of a constitutional right, such as a deprivation occurring in a § 1983 claim, may give rise to an award of compensatory damages for emotional harm if supported by proof of actual injury. Carey v. Piphus, 435 U.S. 247, 255-56 (1978). Such logic extends beyond Title 42 claims to Title VII claims. Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1053 (5th Cir. 1998). Similarly, the Court of Appeals for the Fourth Circuit has held that "[u]nder Title VII, compensatory damages are available for, among other things, "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." Homesley v. Freightliner Corp., 61 Fed.Appx. 105, 116, 2003 WL 1908744, *11 (4th Cir. April 22, 2003) (citation omitted).

In connection with Rule 59(a), Federal Rules of Civil Procedure, a court may employ remittitur to reduce a purportedly excessive jury award. Atlas Food Sys. & Servs., Inc. v. Crane Nat. Vendors, Inc., 99 F.3d 587, 593 (4th Cir. 1996). If an award is determined to be excessive, the remedy is to order a new trial unless plaintiff accepts the court's reduction of the jury award. Id. In exercising its discretion, courts look to whether the jury's award would result in a miscarriage of justice. Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 306 (4th Cir. 1998). In determining whether an award is excessive, the Court of Appeals for the Fourth Circuit has long held that a

> trial judge's determination that a jury's award of compensatory damages is not excessive will not be set aside unless the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice.

Johnson v. Hugo's Skateway, 974 F.2d 1408, 1414 (4th Cir.1992) (internal citations omitted). The court is mindful that the "purpose of compensatory damages is to make the injured plaintiff whole for losses actually suffered…." King v. McMillan, 594 F.3d 301, 314 (4th Cir. 2010) (citation omitted). It is plaintiff's burden at trial to sufficiently articulate that she suffered demonstrable emotional distress; such evidence must demonstrate with specificity how her distress manifested itself; and that evidence must show a causal connection between the distress and the wrong committed by defendant. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 653 (4th Cir. 2002).

III.

From the outset, neither party has provided the court with the transcript of the trial either in support of or in opposition to the Motion for Remittitur. The court has, *sua sponte*, directed the official court reporter to file the trial transcript; as neither party has provided the transcript or cited portions of the transcript other than the excerpts cited by plaintiff, this court's review has been limited to the excerpts and its own recollection of the evidence.

In arguing that the jury's award of $225,000.00 is supported by evidence she presented at trial, plaintiff has provided the court with excerpts of the transcript. The court has reproduced the portions of the transcript relied on by plaintiff, minus the emphasis she added in her response.

> Q. [Peggy Vincent] And so that's where I'm coming from when I say that you didn't report discrimination to anyone in management.
>
> A. [Bridget Taylor] And then the COO of the Department of Revenue, Linda Milsaps, makes a comment in a general meeting that we need an HR person who's going to stand on our side. And we're like, are we separate? I thought that we were all the same Department of Revenue. We're supposed to be one. It's not supposed to be upper management against the employees.

> So when you make comments like that, people have in their head and the culture at the Department of Revenue is do not cross these people. It was sort of like a mob environment. Don't cross them, you might be found dead in an alley. Don't do that. Don't do that.
> So why am I going to take that and say, oh, I'll just go head on. No, that was a big decision. I talked for days and months and months to my husband about this decision. I talked to other people about it. Should I do this? I felt I was done wrong. I really feel I was done wrong.
>
> Even my daughter knew that I was worried about something. And I'm getting to the point that, oh, they see something is wrong. They asked me what's going on. My youngest daughter overheard me talking to my husband about it and she said, Well, Mommy, well, they did you wrong. Aren't there laws in place? We talked about equality in school. I mean, don't you have a right? Yeah, but you have to understand the work environment. And so I'm thinking, well, if my daughter can see this and she's questioning me on this, how am I to tell her you're supposed to stand up for your rights if I'm not standing up for my own.
>
> THE COURT: You've answered the question. Let's move on to another. She answered the question. You don't need to keep going on and on. You may ask the next question.

Transcript of Trial Proceedings, Volume II, Pages 200-202.

> Q. [Carlos Watson] Now, we've gone through your performance evaluations that talk about how flexible you are and how you work with other people. How would you respond to the fact if I asked you were you being flexible at this time?
>
> A. [Bridget Taylor] Well, I think I was at this point in time. I didn't have the confrontation with him. I did explain to him because he was -- actually the issue started out with -- it started out because I had turned in my wireless card, my stuff as he instructed me to. And it turned out with him getting irate and then somehow he and Amy got into it. Kind of confused me because I didn't think it was such a big deal. It was miscommunication. If we're supposed to keep it, the guy from IT can easily send our cards back to me.
>
> Q. Well, was this just more personality conflicts or was this something -- was this manifesting itself in the type of work y'all were doing?
>
> A. I think it just manifest from -- because we never had any big issues like this before until all of this started. It started building up from the conference call in May. And any time we asked anything about the reorganization, we were pretty much fussed at about it.

>    Q.   By whom?
>
>    A.   Scotty.
>
>    Q.   Did you ever have any conversations with Mr. Woodard during this period of time about the reorganization?
>
>    A.   No.
>
>    Q.   Had you brought any of these issues to his attention?
>
>    A.   Well, how we were told we should handle our issues and concerns is that we were to go to the person that we reported to, which at this time it would have been Scotty. We were to take our concerns to Scotty and Scotty would address the concerns with the assistant director and the director in the meeting.
>
>         And any time we had a question about something, his response most of the time was, Alan said you should be glad that you still have a job, or go along with what management says or step down from your position.
>
>    Q.   How did you respond?
>
>    A.   At that time I was really conflicted because I felt like I was done wrong. I wanted to apply for the position. I had even asked John about it way before the transition happened.

Transcript of Trial Proceedings, Volume I, Pages 108-109.

>    Q.   [Carlos Watson] And on that same area, do you feel that you had any choice but to leave the Department of Revenue?
>
>    A.   [Bridget Taylor] And to maintain my sanity, no.

Transcript of Trial Proceedings, Volume I, Pages 140, lines 10-12

>    Q.   [Peggy Vincent] Does the department seek to hire certified fraud examiners?
>
>    A.   [Bridget Taylor] There are -- I know of two on staff. I'm not sure that the department seeks to find it. That was something that myself professionally where I wanted my career path to go, I thought would help me. And considering that we were in the tax business and we dealt with fuel taxes and that there's a lot of fraud in that area, that that would help me advance my career. My goals were to move into upper management in the Department of Revenue and perhaps be the

> Secretary of Revenue, and what more could help me pursue that goal than to obtain advanced degrees and professional certifications.

Transcript of Trial Proceedings, Volume II, Pages 167-168, lines 1-11. The court does not independently recall any other evidence that is relevant to the issue of compensatory damages.

Viewing the evidence cited by plaintiff in a light most favorable to her, the jury had before it evidence that after the acts of discrimination, plaintiff discussed with her family for several months her course of action. Her daughter challenged her to take appropriate steps to protect her rights. She testified that when she questioned the reorganization, she was "fussed at" or told by management to essentially accept it or leave. She testified that to maintain her sanity, she had to resign. Further, she testified that such actions frustrated her goal of advancing within the department.

While such evidence provides insight into what plaintiff went through before deciding to resign, what is missing is any evidence as what impact such events had on her mental or physical health. The court agrees with plaintiff's argument that she is not required to present medical proof to show mental anguish or emotional distress in order to be entitled to compensatory damages; she does, however, have the burden of presenting evidence as to how defendant's Title VII violation(s) adversely impacted her mental, physical, or emotional health, the activities of daily life, and/or her relationship with others, be they friends, family, or others in the community. Testimony that her daughter questioned what she would do in response to the discrimination or that she struggled for months in deciding what to do gives a fact finder no basis for awarding compensatory damages of $225,000.00. Plaintiff provided the jury with no evidence of emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, or other non-pecuniary losses.

While proof of a Title VII violation would entitle a person to an award of at least nominal damages absent proof of actual or compensatory damages, compensatory damages are not automatically inferred. In the context of a Title 42 violation of rights secured by the Constitution, the Supreme Court squarely held in Carey, as follows:

> although mental and emotional distress caused by the denial of procedural due process itself is compensable under § 1983, we hold that neither the likelihood of such injury nor the difficulty of proving it is so great as to justify awarding compensatory damages without proof that such injury actually was caused.

Carey, 435 U.S. at 264. The Court noted that while "essentially subjective, genuine injury in this respect may be evidenced by one's conduct and observed by others." Id. at n. 20. There is no reason to believe that proof of compensatory damages for a Title VII statutory violation is lower than that required in a constitutional violation. The Court has been clear since Carey that even violation of a constitutional right does not entitle a plaintiff to compensatory damages without proof of actual injury. Memphis Community Sch. Dist. v. Stachura, 477 U.S. 299, 308 (1986)

Here, plaintiff put on no evidence that defendant's actions caused any change in her habits of daily living and no third party evidence was elicited by plaintiff showing how her behavior changed after she was subjected to workplace discrimination. Instead, plaintiff's evidence focused on the unlawful motivation of defendant's decision makers and the impact such actions ultimately had on her employment. Clearly, the jury's award of *actual* damages was based on that evidence. But to receive compensatory damages, plaintiff's burden was to come forward with evidence that she sustained an actual injury for which an award of compensatory damages would be appropriate, to wit, evidence of emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

IV.

Having determined that the jury's award of compensatory damages is not supported by the evidence of record, the court must now determine the extent of remittitur. Unlike a number of cases tried in the Fourth Circuit where remittitur was used to lower a clearly excessive award based on the evidence presented, see Bennett v. Fairfax County, 432 F. Supp. 2d 596, 604-605 (E.D.Va. 2006), McClam v. City of Norfolk Police Dept., 877 F. Supp. 277, 284 (E.D. Va. 1995), here there simply was no evidence to support any award of compensatory damages. In a similar situation, Spence v. Bd. of Educ. of the Christina Sch. Dist., 806 F.2d 1198, 1200-01 (3d Cir. 1986), the Court of Appeals for the Third Circuit held that an award of $22,060.00 for emotional distress damages was properly remitted to zero because the plaintiff failed to submit sufficient evidence to prove that the emotional injuries actually occurred. While the court has closely reviewed the excerpts cited for evidence that would support an award of compensatory damages in any amount, none is found.

With the greatest reluctance -- as this court has the utmost respect for the jury's decision and the deliberative process -- this court must remit the jury's award of compensatory damages to zero. An award of nominal damages is also not appropriate as the violation of Title VII also resulted in an award of actual damages in the form of back pay, which remains intact. See Farrar v. Hobby, 506 U.S. 103, 112 (1992); Williams v. Griffin, 952 F.2d 820, 825 n. 2 (4th Cir. 1991).

V.

Resolution of the Motion for Remittitur does not end this court's consideration of the verdict in this case. The Seventh Amendment requires that an order of remittitur be accompanied by an offer for a new trial. Brown v. Alabama Dept. of Transp., 597 F.3d 1160, 1184 (11th Cir.

2010). Such offer is not for trial *de novo* on the underlying Title VII violation, but a trial limited to whether compensatory damages should be awarded. The court will, therefore, allow plaintiff 14 days from entry of this Order to accept such offer by filing a Notice of Acceptance of offer of a new trial. If she does not so elect, this Order will be reduced to an Amended Final Judgment.

***

The parties are advised that while the court has found a deficiency in the proof, it is probable that plaintiff will be able to remedy the problem in a new trial. It is suggested that the parties meet and confer in an effort to resolve this issue without the necessity of convening a second jury. The district court's opinion Bennett, supra, provides an excellent summary of reasonable compensatory damage awards where medical evidence is not available.

## ORDER

**IT IS, THEREFORE, ORDERED** that defendant's Motion for Remittitur (#59) is **GRANTED**, and the jury's award of compensatory damages is remitted to $0. Plaintiff shall have 14 days from entry of this Order to accept the court's offer of a New Trial.

Signed: July 17, 2015

Max O. Cogburn Jr
United States District Judge